1    SEYFARTH SHAW LLP
     Andrew L. Scroggins
2    ascroggins@seyfarth.com
     233 South Wacker Drive, Suite 8000
3    Chicago, Illinois 60606-6448
     Telephone:    (312) 460-5000
4    Facsimile:     (312) 460-7000

5    Brian P. Long (SBN 232746)
     bplong@seyfarth.com
6    601 South Figueroa Street, Suite 3300
     Los Angeles, California 90017-5793
7    Telephone:    (213) 270-9600
     Facsimile:     (213) 270-9601

8

9    Attorneys for Defendant
     TEKSYSTEMS, INC.

10

11

12                UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA
13

14

| | |
|---|---|
| BO AVERY, PHOEBE RODGERS, KRISTY CAMILLERI, AND JILL UNVERFERTH, individually, on behalf of themselves and on behalf of all others similarly situated, | Case No.  3:22-cv-02733 |
| | **DEFENDANT TEKSYSTEMS, INC.'S NOTICE OF REMOVAL** |
|          Plaintiff, | [County of San Francisco Superior Court Case No. CGC-22-597900] |
|      v. | |
| TEKSYSTEMS, INC., | |
|          Defendant. | |

**TO THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS BO AVERY, PHOEBE RODGERS, KRISTY CAMILLERI, AND JILL UNVERFERTH AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant TEKSYSTEMS, INC. ("TEKsystems" or "Defendant"), hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, asserting original federal jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1453, to effect the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of San Francisco, to the United States District Court for the Northern District of California, and state that the removal is proper for the reasons set forth below.

"Congress intended CAFA jurisdiction to be interpreted expansively." *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015); *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (the "Supreme Court left no doubt" there is no antiremoval presumption for CAFA cases); *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

## PLEADINGS, PROCESSES, NOTICES, AND ORDERS

On January 28, 2022, Plaintiffs BO AVERY, PHOEBE RODGERS, KRISTY CAMILLERI, and JILL UNVERFERTH (collectively "Plaintiffs"), filed a Class Action Complaint in the Superior Court of the State of California in and for the County of San Francisco, captioned "*BO AVERY, PHOEBE RODGERS, KRISTY CAMILLERI AND JILL UNVERFERTH, individually, on behalf of themselves and on behalf of all other similarly situated, v. TEKSYSTEMS, INC.*" ("Complaint"), Case No. CGC-22-597900. A true and correct copy of all pleadings, processes, notices, and orders received by Defendants in this action, other than the operative First Amended Complaint, are attached as **Exhibit A** hereto, as required by 28 U.S.C. § 1446(a) and are incorporated by reference as though fully set forth herein.

Plaintiffs' original Complaint alleges six purported causes of action as follows: (1) Violation of Cal. Labor Code §§ 510, 1194, and 1198, and Wage Order No. 4-2001 (Failure to Pay Overtime Wages); (2) Violation of Cal. Labor Code §§ 201-03 (Failure to Pay Timely Wages During Employment and Upon Separation); (3) Violation of Cal. Labor Code §§ 226 and 1174 (Failure to Provide and

Maintain Accurate Wage Statements); (4) Violation of Cal. Labor Code §§ 226.7 and 512, and Wage Order 4-2001 (Meal Break Violations); (5) Violation of Cal. Labor Code § 226.7 and Wage Order 4-2001 (Rest Break Violations); and (6) Violation of Cal. Bus. & Prof. Code § 17200, *et. seq.* (California Unfair Competition Law).

The original Complaint seeks to certify a class of "[a]ll individuals who worked for Defendant in the state of California as Recruiters and who were classified as exempt **at any time during the period from the date this Complaint is filed until the date of certification.**" (Ex. A, Compl. ¶ 60 (emphasis added); *see also id.* ¶ 58 (Plaintiffs purports to represent "all others similarly situated as a class action under California Code of Civil Procedure section 382.").)

On or about April 4, 2022, Plaintiffs filed their First Amended Complaint ("FAC"). The FAC alleges seven purported causes of action as follows: (1) Unpaid Overtime, Labor Code §§ 510, 1194, 1198; (2) Failure to timely pay wages upon termination, Labor Code §§ 201-03; (3) Failure to provide and maintain timely, accurate, itemized wage statements Labor Code §§ 226, 1174; (4) Meal break violations, Labor Code §§ 226.7 and 512; (5) Rest break violations, Labor Code § 226.7; (6) Unlawful, unfair, and/or deceptive business practices, Bus. & Prof. Code § 17200, *et. seq.*; and (7) Civil Penalties Under Private Attorney General Act, Labor Code §§ 2698, et seq.

Critically, the FAC seeks to certify a class of "[a]ll individuals who worked for Defendant in the state of California as Recruiters and who were classified as exempt **at any time from January 18, 2018, four years from the date the original complaint was filed, through the date of certification.**" (Ex. B, FAC. ¶ 60). In other words, the new class definition added four years to the period covered by the original complaint. A true and correct copy of the operative First Amended Complaint is attached as **Exhibit B** hereto.

On April 4, 2022, Defendant filed its Answer to Plaintiff's FAC in San Francisco Superior Court. A true and correct copy of Defendant's Answer is attached as **Exhibit D** hereto.

## TIMELINESS OF REMOVAL

Without conceding that service of the Summons and Complaint, or the FAC was effective for purposes of 28 U.S.C. § 1446(b), this Notice of Removal is timely because it is being filed within thirty (30) days of Defendant's effective receipt of the Summons and FAC on April 4, 2022, via e-mail,

3

**although Defendant did not authorize electronic service in this case**[1], and within one (1) year of the commencement of this action on January 28, 2022. (Exhibit A, Complaint ("Compl"), filed January 28, 2022. The time for filing a Notice of Removal does not run until a party **has been formally served with the summons and complaint under the applicable state law** "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after **service** of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"). See also *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."). Because the class definition in the original Complaint was changed by the FAC, it is **service** of the FAC that triggers the time to remove. The FAC was filed and emailed on April 4, 2022 via e-mail **without express agreement for electronic service**. As Defendant had not appeared in this action as of that date, and had not given express consent to electronic service, the emailing of the FAC on April 4, 2022 did not constitute "service" pursuant to California Code of Civil Procedure Section 1010.6 and did not trigger the time within which to remove. See *Lasalle v. Vogel*, 36 Cal. App. 5th 127 (2019)("We find it significant that by law e-mails are insufficient to serve notices on counsel in an ongoing case without prior agreement and written confirmation.")(citing Cal. Code Civ. Proc. §§ 1013,

---

[1] Pursuant to California Code of Civil Procedure Section 1010.6, the service via electronic means is only effective if Defendant "**expressly consented** to receive electronic service in [this] specific action." (emphasis added). Further, Section 1010.6 provides that "Express consent to electronic service may be accomplished either by (I) serving a notice on all the parties and filing the notice with the court, or (II) manifesting affirmative consent through electronic means with the court or the court's electronic filing service provider, and concurrently providing the party's electronic address with that consent for the purpose of receiving electronic service." Defendant did not provide express consent, or confirm that consent in writing, to receive **electronic service** in this case. As a result, the FAC has not been properly served on Defendant under California law. Moreover, even if it had, the statute extends the time to perform any act in response to service by two days. Defendant removed the matter now, despite the defective service of the FAC.

subd. (e), 1010.6, subd. (a)(2)(A)(ii); Cal. Rules of Court, rule 2.251(b).) Thus, removal is timely

pursuant to 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a).

<u>**BASIS FOR REMOVAL**</u>

## I.     JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

This Court has original jurisdiction of this action under CAFA, codified in pertinent part at

28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable, pursuant to 28 U.S.C.

§ 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in

controversy exceeds $5,000,000 exclusive of interest and costs, and the action is a class action in which

at least one class member is a citizen of a state different from that of Defendant. *See*

28 U.S.C. §§ 1332(d)(2) & (d)(6). Furthermore, the number of putative class members is greater than

100. 28 U.S.C. § 1332(d)(5)(B). **Exhibit C**, Declaration of Dana Kostuck in Support of Defendant's

Notice of Removal ("Kostuck Decl."), ¶ 10.)

### A.     <u>CAFA's Minimal Diversity Requirement Is Satisfied</u>

CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is,

at least one purported class member must be a citizen of a state different from any named defendant.

28 U.S.C. § 1332(d)(2)(A). In the instant case, at least one member of the putative class and Defendant

are diverse from one another because one or more of Plaintiffs Avery, Rodgers, Camilleri, and

Unverferth is a citizen of California while Defendant is a citizen of Maryland.[2]

#### 1.     Plaintiffs Are Citizens of California

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.

*Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie*

evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

Citizenship is determined by the individual's state of domicile at the time that the lawsuit is filed.

*Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797

F.2d 747, 750 (9th Cir. 1986)). "[A] person is 'domiciled' in a location where he or she has established a

'fixed habitation or abode in a particular place, and [intends] to remain there permanently or

indefinitely." *Armstrong*, 243 F.3d at 546.

---

[2] Defendant is neither a state, state officials, or any other governmental entities.

Throughout his employment by Defendant, Plaintiff Avery maintained a habitation or abode in Roseville, California. (Ex. C, Kostuck Decl. ¶ 5.). Plaintiff Avery's intent to remain domiciled in the state is confirmed by his FAC allegation he was and continues to be a resident of Roseville, California. (Ex. B, FAC. ¶ 31.)

Throughout her employment by Defendant, Plaintiff Camilleri maintained a habitation or abode in San Francisco, California. (Ex. C, Kostuck Decl. ¶ 7.) Plaintiff Camilleri's intent to remain domiciled in the state is confirmed by her FAC allegation she was and continues to be a resident of San Francisco, California. (Ex. B, FAC. ¶ 37-39.)

Throughout her employment by Defendant, Plaintiff Rodgers maintained a habitation or abode in Cotati, California. (Ex. C, Kostuck Decl. ¶ 6.) Plaintiff Rodgers' intent to remain domiciled in the state is confirmed by her FAC allegation she was and continues to be a resident of Irvine, California. (Ex. B, FAC. ¶ 34-36.)

Throughout her employment by Defendant, Plaintiff Unverferth maintained a habitation or abode in Roseville, California. (Ex. C, Kostuck Decl. ¶ 8.) Plaintiff Unverferth's intent to remain domiciled in the state is confirmed by her FAC allegation she was and continues to be a resident of San Francisco, California. (Ex. B, FAC. ¶ 40-42.)

### 2.     Defendant Is A Citizen of Maryland

Pursuant to 28 U.S.C. §1332(c), a "corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which is where a corporation's officers direct, control and coordinate the corporations' activities. *Hertz Corp. v. Friend,* 130 S. Ct. 1191, 1192–93 (2010). Thus, the appropriate test to determine a corporation's principal place of business is what is commonly referred to as the "nerve center" test. *See id.*

TEKsystems is a corporation organized under the laws of the State of Maryland. (Ex. C, Kostuck Decl. ¶3). TEKsystems' corporate headquarters is located in Hanover, Maryland, and it is there that TEKsystems' high level officers direct, control, and coordinate TEKsystems activities. (*Id.* at ¶ 3.)

1    Under the "nerve center" test, TEKsystems principal place of business is Maryland. (*Id.* at ¶ 3.) Thus,

2    TEKsystems is a citizen of Maryland. 28 U.S.C. §1332(c).

3        Accordingly, Defendant is not currently a citizen of California and was not a citizen of California

4    at the time Plaintiffs filed the Complaint or FAC. Thus, minimal diversity exists for the purposes of

5    removal. 28 U.S.C. § 1332(d)(2)(A).

6        **B.    There Are More Than 100 Putative Class Members**

7        CAFA requires that the aggregate number of members of all proposed classes in the complaint

8    be at least 100. *See* 28 U.S.C. § 1332(d)(5)(B). The purported class alleged in the FAC includes "[a]ll

9    individuals who worked for Defendant in the state of California as Recruiters and who were classified as

10   exempt **at any time from January 18, 2018, four years from the date the original complaint was**

11   **filed, through the date of certification.**" (Ex. B, FAC. ¶ 60). Plaintiffs allege that upon information

12   and belief "there are more than 200 class members. (*Id.* ¶ 63.)

13       The original Complaint in this action was filed on January 28, 2022. (Ex. A.) For the period from

14   January 28, 2018 through April 30, 2022, TEKsystems has employed 382 exempt Recruiters in

15   California who satisfy Plaintiffs' proposed class definition. (Ex. C, Kostuck Decl. ¶ 10.) Accordingly,

16   Defendant has satisfied CAFA's requirement that there are more than 100 putative class members.

17       **C.    The Amount In Controversy Exceeds $5,000,000**

18       CAFA authorizes the removal of class actions where the amount in controversy exceed

19   $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

20       The removal statute requires that a defendant seeking to remove a case to federal court must file

21   a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

22   A defendant's "notice of removal need include only a plausible allegation that the amount in controversy

23   exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 89

24   (evidence is not required to be filed with the notice).

25       While Defendant denies any liability as to Plaintiffs' claims, the amount in controversy as

26   alleged in the FAC exceeds $5,000,000. Defendant furthermore denies that class treatment is

27   appropriate, that Plaintiffs have standing to represent any proposed class, and that the proposed class

28   would meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Defendant expressly

reserves the right to challenge Plaintiffs' claims, adequacy and standing to represent any proposed class, class definitions, and allegations of damages in all respects. Defendant fully reserve all rights and defenses. **For purposes of this removal only**, **all calculations supporting the amount in controversy are based on the FAC's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.**

Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." *See* Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43. ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

Plaintiffs' FAC does not allege the amount in controversy for the class they purport to represent. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

The Defendant need only make a plausible claim that the amount in controversy exceeds the jurisdictional amount. *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. As Plaintiffs here have not alleged any particular damages, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra*, 775 F.3d at 1198; *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiffs' case for him by proving the actual rates of violation."); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the

DEFENDANT'S NOTICE OF REMOVAL

jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold). Courts have found that estimates premised on 100 percent violation rates are reasonable where the plaintiff does not specifically allege otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Centers LLC,* No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets,* No. EDCV 18-2127 JGB (SPx), 2019 WL 688209, at *5 & n.7 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to all putative class members reasonable."); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC,* No. CV 17-1554-MWF (RAOx), 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiffs' Complaint could be reasonably read to allege a 100% violation rate.) *Arreola v. Finish Line,* No. 14-CV-03339-LHK, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

Other courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC,* No. 17-cv-03241-DSF-AFM, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate."); *Torrez v. Freedom Mortg., Corp.,* No. 17-cv-00867-JGB-KK, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "[the defendant] engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Ritenour v. Carrington Mortg. Servs. LLC,* 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is

reasonable for Defendants to assume a 100% violation rate—especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.,* No. 14-cv-01631-ODW-PLA, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100% violation rate for waiting-time penalties because the complaint did not limit the frequency of violations); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks.").

### 1.    Unpaid Overtime Wages

Plaintiffs' first claim seeks alleged unpaid overtime wages. (Ex. B, FAC ¶¶ 69-74.) Plaintiffs allege that they and the class members should have been classified as "non-exempt employees entitled to be paid overtime compensation for all overtime hours worked." (Ex. B, FAC ¶ 71.) Plaintiffs further allege that "[t]hroughout the Class Period, and continuing through the present, Plaintiffs and class members worked in excess of eight (8) hours in a workday, twelve (12) hours in a workday and/or forty (40) hours in a workweek." (*Id.* at ¶ 72.) Plaintiffs further contend that "Defendant misclassified Plaintiffs and class members as exempt from overtime pay entitlement and failed and refused to pay them overtime premium pay for their overtime hours worked. " (*Id.* at ¶ 73.) Plaintiffs allege that "Due to Defendant's productivity demands, Plaintiffs and other Recruiters would routinely arrive to work at or earlier than 8:00 a.m. and stay past 5:00 p.m. They would also regularly work through their lunch periods, work on weekends, and work late in the evening from home." (*Id.* at ¶ 55.) Plaintiffs further allege that "Plaintiffs and other Recruiters routinely worked more than eight (8) hours each day, more than twelve (12) hours each day, and more than fifty (50) hours each week. Working overtime was integral to their employment." (*Id.* at ¶ 56.) Plaintiff also allege "Defendant's practice of uniformly classifying Recruiters as exempt employees and failing to pay them overtime, failing to provide them

with meal and rest breaks, failing to pay all owed overtime at the time of separation, and failing to provide timely, accurate, and itemized wage statements was consistent for all class members." *(Id.* at ¶ 64.) Similarly, Plaintiffs allege "Defendant maintained a common practice of misclassifying Recruiters as exempt and failing to pay them overtime wages. Defendant had a common practice of failing to provide Recruiters with meal and rest breaks, failing to pay them all owed compensation, including overtime wages, at the time of their separation from employment, and failing to provide them with timely, accurate, itemized wage statements reflecting their hours worked." *(Id.* at ¶ 68.)

Here, during some or all of the time period January 28, 2018 through April 30, 2022, TEKsystems employed 482 exempt Recruiters in California on a full-time basis. (Ex. C, Kostuck Decl. ¶ 10.) These full-time exempt Recruiters worked approximately 32,351 workweeks between January 28, 2018 and April 30, 2022.[3] *(Id.* ¶ 11) The annual compensation earned by these full-time exempt Recruiters from January 28, 2019 through April 30, 2022 was $70,059,143.24. *(Id.* at ¶¶ 12) This equates to an hourly rate of $54.14 per hour.[4] That hourly rate in turn results in an overtime rate of $81.22 ($54.14 * 1.5).

In light of the allegations in the FAC and Defendant's internal investigation and analysis, Defendant has calculated the amount in controversy with respect to Plaintiffs' class claim for unpaid overtime concerning exempt Recruiters in California as approximately **$2,627,217.87**. This figure was calculated assuming a conservative estimate of one unpaid overtime hour per week for each of the putative class members during the class period.[5]

---

[3] Plaintiffs' overtime claim is subject to a three year statute of limitations, which is extended to four years by virtue of their claim for violation of Business and Professions Code § 17200 *et seq.*

[4] Under California's wage laws, the regular rate is the average hourly rate calculated by dividing the total pay for employment (except the statutory exclusions) in any workweek by the total number of hours actually worked. Thus, Defendant's calculation was as follows: [(total taxable annual income / total workweeks = weekly pay earned by full-time exempt Recruiters from January 28, 2018 through April 30, 2022) Hourly pay = weekly pay/ 40 hours).

[5] Specifically, Defendant's calculation was as follows: [(32,351 weeks worked by full-time exempt Recruiters from January 28, 2018) * (1 unpaid overtime hours) * ($81.22 overtime rate)]

DEFENDANT'S NOTICE OF REMOVAL

### 2.    Failure to Timely Pay Wages Upon Termination Claims

Plaintiffs' second claim alleges that Defendant is liable for 30 days of wages to those Plaintiffs and class members who were terminated but did not receive timely wages during employment. (Ex. B, FAC. ¶¶ 75-79.) Specifically, Plaintiffs allege that they "and all Class Members who ceased employment with Defendant are entitled to unpaid compensation, but to date have not received such compensation." (Ex. B, FAC. ¶77.) Further, Plaintiffs allege that 30 days have passed since Plaintiffs and certain other class members ceased employment, and Defendant willfully did not pay compensate for all hours worked, so "Plaintiffs and class members whose employment ended during the Class period are entitled to thirty (30) days' wages under Labor Code § 203 together with interest thereon and attorney's fees and costs." (Ex. B, FAC. ¶¶ 78-79.)

Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or January 28, 2019. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

From January 28, 2019 through April 30, 2022, approximately 226 exempt Recruiters in California terminated employment by TEKsystems. (Ex. C, Kostuck Decl. ¶ 13.) Defendant has calculated the amount in controversy with respect to Plaintiffs' class claim for failure to timely pay wages upon termination of employment as approximately **$2,936,545.96** ($54.14 hourly rate * 226 employees * 8 hours * 30 days).

### 3.    Failure to Provide Accurate Wage Statements

Plaintiffs' third cause of action alleges that Defendant failed to provide and maintain accurate wage statements. (Ex. B, FAC. ¶ 80-82.) In particular, Plaintiffs allege that Defendant "knowingly and intentionally" failed to provide information about all hours worked. (Ex. B, FAC ¶ 81.) As a result, Plaintiffs allege that they are entitled to "$50.00 for the initial pay period in which the violation occurred and $100.00 per employee per violation in a subsequent pay period. (Ex. B, FAC ¶ 82.) California law provides that such penalties are "not to exceed an aggregate penalty of four thousand dollars ($4,000)[.]" Cal. Labor Code § 226(e)(1). The statute of limitations for such claims is one year. *Id.*

TEKsystems Recruiters are paid and receive wage statements on a weekly basis (*i.e.* 52 pay periods per year). (*Id.*) From January 28, 2021 (the one-year period prior to the filing of Plaintiff's Complaint) through April 30, 2022, TEKsystems employed approximately 282 exempt Recruiters in California for a total of 9,851 pay periods. (Ex. C, Kostuck Decl. ¶ 15.)

Taken together, Defendant has calculated the amount in controversy with respect to Plaintiffs' class claim for failure to provide accurate wage statements as approximately **$971,000** (282 employees * $50 for initial violation) + (9,569 remaining pay periods * $100).

### 4.    Meal Break Claims

Plaintiffs' fourth claim alleges that Defendant failed to provide meal breaks. (Ex. b, FAC. ¶¶ 83-87.) Plaintiffs allege that they "and class members regularly work and have worked in excess of five-hour shifts without being afforded at least a half hour meal break in which they were relieved of all duty and more than ten-hour shifts without being afforded a second half-hour meal break in which they were relieved of all duty". (Ex. B, FAC ¶ 86.) Plaintiffs further allege that '[a]s a result of Defendant's failure to afford proper meal periods, Defendant is liable to Plaintiffs and the Class for one hour additional pay

at the regular rate of compensation for each workday that proper meal periods were not provided." (Ex. B, FAC. ¶ 87.)

California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiffs allege a claim for meal and rest break premiums pay as part of their unfair competition claim under Business and Professions Code section 17200, *et seq*. (Ex. B, FAC ¶ 97.) Although Defendant contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiffs' FAC, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

Plaintiffs are silent as to the amount of alleged meal periods or rest periods they claim to have been denied, thereby precluding precise estimates of the amount in controversy. Because Plaintiffs allege that Defendants had a "practice of uniformly classifying Recruiters as exempt employees and failing to pay them overtime, failing to provide them with meal and rest breaks . . . was consistent for all class members" (*id.* at ¶ 64), the FAC contemplates a 100% violation rate for the meal period and rest period claims. Accordingly, a 100% violation rate can properly be assumed for purposes of calculating

16

DEFENDANT'S NOTICE OF REMOVAL

the amount in controversy of Plaintiff's meal and rest period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%")).

While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the FAC, Defendant will conservatively assume that putative class members were not provided **just one meal period and one rest break each workweek**.[6] Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there at least one meal period **or** one rest period violation each week for every employee. Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant

---

[6]/ Plaintiffs cannot allege that this action involves common questions of law and fact as to the putative class without also implicitly alleging that each putative class member suffered at least one meal period and one rest period violation per week based on a "policy and practice."

maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

TEKsystems employed 482 exempt Recruiters in California during some or all of the time period January 28, 2018 through April 30, 2022. (Ex. C, Kostuck Decl. ¶ 10.) During that time period, those Recruiters worked approximately 32,351 workweeks.[7] (*Id*. ¶ 11.) In light of the allegations in the FAC and Defendant's internal investigation and analysis, Defendant has calculated the amount in controversy with respect to Plaintiffs' class claim for unpaid meal breaks as approximately **$1,751,478.58**. This figure was calculated assuming a conservative estimate of one unpaid meal break per week for each putative class members.[8]

### 5.    Rest Break Violations

Plaintiffs' fifth claim alleges that Defendant failed to authorize and permit proper rest periods for Plaintiffs and the Class Members. (Ex. B, FAC ¶¶ 88-93.) Plaintiffs allege that they "and other Class Members regularly work and/or have worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four (4) hours of work performed or major fraction thereof". (*Id*. ¶ 92.) Plaintiffs also allege that they and the class members are entitled to recover one additional hour of pay, paid at their regular rate of compensation, for each workday during which a rest period was not provided. (Ex. B, FAC ¶ 93.)

---

[7] Plaintiffs' meal break claims are subject to a three year statute of limitations, which is extended to four years by virtue of their claim for violation of Business and Professions Code § 17200 *et seq.* (Ex. B, FAC ¶¶ 94-101.) For purposes of this motion, Defendant has analyzed only the shorter three year period.

[8] Specifically, Defendant's calculation was as follows: [(32,351 weeks worked by exempt Recruiters from January 28, 2018 through April 30, 2022) * (1 unpaid meal break) * ($54.14 regular rate).]

TEKsystems employed 482 exempt Recruiters in California during some or all of the time period January 28, 2018 through April 30, 2022. (Ex. C, Kostuck Decl. ¶ 10.) During that time period, those Recruiters worked approximately 32,351 workweeks.[9] (*Id.* ¶ 11.) In light of the allegations in the FAC and Defendant's internal investigation and analysis, Defendant has calculated the amount in controversy with respect to Plaintiffs' class claim for unpaid rest breaks as approximately **$1,751,478.58**. This figure was calculated assuming a conservative estimate of one unpaid rest break per week for each putative class members.[10]

### 6.    Attorneys' Fees

Plaintiffs also seeks to recover their attorneys' fees. (Ex. B, FAC ¶¶ 30, 74, 79, 101, Prayer for Relief.) A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, No. 12-cv-02203-AJB-DHB, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (attorneys' fees appropriately included in determining amount in controversy).

In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees awarded under the "percentage of fund" calculation and courts may award more than this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (finding support for adjusting the 25% presumptive benchmark upward and holding that Plaintiffs' request for attorneys'

---

[9] Plaintiffs' meal break claims are subject to a three year statute of limitations, which is extended to four years by virtue of their claim for violation of Business and Professions Code § 17200 *et seq.* (Ex. B, FAC ¶¶ 94-101.) For purposes of this motion, Defendant has analyzed only the shorter three year period.

[10] Specifically, Defendant's calculation was as follows: [(32,351 weeks worked by exempt Recruiters from January 28, 2018 through April 30, 2022) * (1 unpaid rest break) * ($54.14 regular rate).]

fees in the amount of 42% of the total settlement payment was appropriate and reasonable); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25% of the fund).

Here, the amount of alleged damages is and penalties is estimated as follows:

|  |  |
|---|---|
| $  2,627,217.87 | unpaid overtime wages (Section I.C.1, *supra*) |
| 2,936,545.96 | failure to timely pay wages upon termination (Section I.C.2, *supra*) |
| 971,000.00 | failure to provide accurate wage statements (Section I.C.3, *supra*) |
| 1,751,478.58 | unpaid meal breaks (Section I.C.4, *supra*) |
| 1,751,478.58 | unpaid rest breaks (Section I.C.5, *supra*) |
| **$ 10,037,720.99** | Total damages and penalties |

Thus, applying the conservative benchmark of 25 percent, Plaintiffs' potential attorneys' fees based on the amount in controversy established above are estimated at approximately **$2,509,430**. Accordingly, the amount in controversy is estimated to be approximately **$12,547,150** when damages and penalties and attorneys' fees are taken into account.

### D.    Conclusion Regarding CAFA Jurisdiction

CAFA jurisdiction is proper where the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs; the action is a class action in which at least one class member is a citizen of a state different from that of the defendant; and the number of putative class members is greater than 100. 28 U.S.C. §§ 1332(d)(2) and (d)(6); 28 U.S.C. § 1332(d)(5)(B). As established in the preceding sections, at least one member of the putative class is a citizen of California and Defendant is a citizen of Maryland; there are approximately 482 putative class members; and the amount in controversy is estimated to be approximately **$12,547,150**. Accordingly, removal based on CAFA jurisdiction is proper.

To the extent that Plaintiffs have alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VENUE**

As discussed above, Plaintiffs Avery, Camilleri, Rodgers, and Unverferth are citizens of California domiciled in Roseville, San Francisco, Irvine, and Roseville, California, respectively. (Section I.A.1, *supra*.) Plaintiffs originally brought this action in the Superior Court of the State of California for the County of San Francisco, which is located within the Northern District of California. Therefore, venue lies in the United States District Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. §§ 84(a), 1391, 1441(a) and 1446(a).

## **SERVICE OF NOTICE OF REMOVAL ON STATE COURT**

Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiffs and their counsel, and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California for the County of San Francisco.

## **RESERVATION OF RIGHTS**

By filing this Notice of Removal, Defendant does not concede or waive any defense, and Defendant expressly reserves all defenses to this action.

///

///

///

///

///

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.

DEFENDANT'S NOTICE OF REMOVAL

1    DATED: May 6, 2022                                 Respectfully submitted,

2                                                       SEYFARTH SHAW LLP

3

4                                                       By:     */s/ Brian P. Long*
                                                               Brian P. Long
5                                                              Attorneys for Defendant
                                                               TEKSYSTEMS, INC.
6

7    81029844v.4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL