SEYFARTH SHAW LLP
Brian P. Long (SBN 232746)
bplong@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:    (213) 270-9600
Facsimile:    (213) 270-9601

Andrew L. Scroggins
(admission pro hac vice)
ascroggins@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

Attorneys for Defendant
TEKSYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BO AVERY, PHOEBE RODGERS, KRISTY CAMILLERI, AND JILL UNVERFERTH, individually, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEKSYSTEMS, INC.,<br><br>Defendant. | Case No. 3:22-cv-02733-JSC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF LYNSEY MAJOR**<br><br>Date:   August 15, 2024<br>Time:   10:00 a.m.<br>Ctrm.:   8 – 19th Floor<br><br>Judge: Hon. Jacqueline Scott Corley |

In its Motion to Strike the Declaration of Lynsey Major, TEK explained why the Major Declaration is not admissible as a "summary" of data pursuant to Federal Rule of Evidence 1006 or as an expert opinion pursuant to Federal Rule of Evidence 702. (ECF No. 112.)

Plaintiffs concede the second point. (ECF No. 118 at 18.) As acknowledged in their Response, "Plaintiffs did not disclose Ms. Major as an expert witness because she is not one." (*Id*.) As a consequence, the Court should reject the opinions Major offers, including her purported conclusions about the activities Recruiters perform and the work tenure of Recruiters. (ECF No. 112 at 21.)

That leaves for decision only whether Major "summarized" data in a manner permitted by Federal Rule of Evidence 1006. She did not. As explained in further detail below, Major went beyond "summarizing" the contents of certain documents and instead applied her own unfounded interpretations, evaluations, calculations, computations, and analysis, and in the process committed errors that make her conclusions inaccurate.

I.   **RESPONSE TO PLAINTIFFS' "RELEVANT FACTS"**

Plaintiffs state in their Response that "TEK maintains a proprietary internal database that all of its Recruiters use to record their work activities." (ECF No. 118 at 4.) This is highly misleading, as only a select few activities are recorded in TEK's Connected database, or its predecessor RWS.[1] As the description provided by TEK makes clear, Connected serves many purposes for TEK, including for Recruiters, but it is not intended or used to record all activities performed by Recruiters. (*See* ECF No.101-27 (TEK Resp. to Interrogatories, No. 7.)

Plaintiffs falsely state that "Connected data identifies the work activities the Named Plaintiffs and TEK's declarants performed and the dates and times the activities were recorded." (ECF No. 118 at 5.) Connected does not hold records of all, or even the most important, activities performed by Recruiters, or the time Recruiters spend on any given activity. As TEK's corporate designee explained, in testimony that Plaintiffs cite but misstate, Connected is where Recruiters document their *interactions*

---

[1] The citations by Plaintiffs do not support their argument either. Garret Haycock testified that Connected is a customer relationship management (CRM) tool that has information about potential job candidates in it. (ECF No. 101-1 (Haycock Tr.) 140:19-22. He also explained why it is important for Recruiters to accurately record information about the activities that are tracked in Connected (*id*. at 150:21-152:2), but nothing about tracking all activity in Connected, which it is not intended or designed to do.

with candidates and people placed to work with TEK's customers.[2] Plaintiffs do not contend that their job duties consisted entirely of candidate interactions. Rather, Plaintiffs contend that the primary duty of Recruiters is "screening and matching potential job candidates" (ECF No. 100 at 5), and the cookie cutter declarations offered by Plaintiffs describe in the exact same words that a central part of their job was searching for candidates.[3] None of the Activities recorded in Connected relate to efforts to search for candidates. (*See* Motion, ECF No. 112 at 6-13 (descriptions of Activity Types and Activity Categories).)[4] Other activities that Plaintiffs' declarants claim they regularly engaged in, such as attending Red Zone meetings[5] and meeting with Account Managers and Account Leads,[6] also are not recorded in Connected. (ECF No. 112 at 6-13.) Thus it is evident that the Connected data at issue says nothing about activities that the Plaintiffs claim to be central to the job of Recruiter.

Time-keeping also is not the purpose of Connected, as Plaintiffs acknowledge. (ECF No. 118 at 5.) Plaintiffs attempt to confuse the issue by citing a TEK interrogatory response, but the language they

---

[2] "Q. Okay. And recruiters – so recruiters view the requirements in Connected; correct? A. Yes, that is correct. Q. And recruiters input their activities and tasks into Connected; correct? A. Yes, that's where they document all of their consulting interactions[,]" followed by further description of "consulting interactions." (ECF No. 101-10 (Robert Doyle Tr.) 124:25-125:24.) Plaintiffs' other citations also fail to support the point. Haycock testified why it is important for Recruiters to accurately record information about the activities that are tracked in Connected. (ECF No. 101-1 (Haycock Tr.) at 150:21-152:2.) Leo DiBenedetto testified Recruiters are encouraged to record their interactions in real time so that there is no confusion among Recruiters whether a candidate has been contacted, and to ensure that all Recruiters have access to up to date information about a candidate. (ECF No. 101-5 (DiBenedetto Tr.) 180:13-181:10). The responses to written discovery confirm just that the timestamps in the Connected data reflect the date and time when information was added to the database. (ECF No. 112-4, Nos. 12-43.)
[3] Brissey Decl. ¶ 17("It was my job to search for, contact, and screen candidates whose job experience and skill sets matched the criteria listed in the Requirement."), ¶ 18 ("searched employment databases"), ¶ 25 ("searching for candidates"), ¶ 37 ("I spent most of my time matching potential job candidates to Requirements and attempting to reach out to candidates."); Cunningham Decl. ¶¶ 17-18, 25, 37 (same); DeCair Decl. ¶¶ 16-17, 24, 37 (same); Doerner Decl. ¶¶ 16-17, 24, 36 (same); Larsen Decl. ¶¶ 16-17, 24, 36 (same); Tillson Decl. ¶¶ 16-17, 24, 36 (same).
[4] TEK included as an exhibit to its Motion the 2019 Connected User Guide. (ECF No. 112-10.) The User Guide includes examples of ways Connected may be used when searching for candidates. (*E.g., id*. at TEK-Recruiter_Lit-00135421, identifying Boolean search operators that Recruiters can use to build search strings.) These sections are distinct from descriptions of Activities that Recruiters record in Connected. Plaintiffs did not mention the User Guide in their Response.
[5] Brissey Decl. ¶ 14 ("Each morning, other Recruiters and I were required to attend a meeting called Red Zone."); Cunningham Decl. ¶ 14 (same); DeCair Decl. ¶ 13 (same); Doerner Decl. ¶ 13 (same); Larsen Decl. ¶ 13 (same); Tillson Decl. ¶ 13 (same).
[6] Brissey Decl. ¶ 18 ("To find matches for job Requirements, I generally first met with the assigned Account Manager or Account Lead to discuss the Requirement and potential key words or searches to run in the databases that Recruiters were trained to use."); Cunningham Decl. ¶ 18 (same); DeCair Decl. ¶ 17 (same); Doerner Decl. ¶ 17 (same); Larsen Decl. ¶ 17 (same); Tillson Decl. ¶ 17 (same).

1   place in quotes does not appear anywhere in the cited document. (ECF No. 118 at 5 fn.4, citing ECF No.
2   101-27 (Def's Resp. to Pls 1st Interrogatories) No. 6.) TEK did advise Plaintiffs that "different systems
3   used by some Recruiters in the performance of their duties may record information suggestive of time
4   worked by Recruiters." (*Id*. (Def's Resp. to Pls 1st Interrogatories) No. 9.) To be clear, though, this
5   response indicates that some systems may indicate days and times of day that Recruiters may have been
6   working, not the duration of time Recruiters spent on any particular activity or their primary duties.

7       Simply stated, Connected is not intended to and does not track all or even most activities that
8   Recruiters engage in, much less indicate how much time is spent on any particular activity.

## II. MAJOR'S OPINIONS SHOULD BE REJECTED BECAUSE SHE IS CONCEDEDLY NOT AN EXPERT WITNESS

Plaintiffs confirm in their Response that Ms. Major is not an expert witness. (ECF No. 118 at 18.) Accordingly, the Court should disregard her purported opinions on several topics, including the percentage distribution of "Activity" by Named Plaintiffs and certain declarants, as well as her assertions about "the average tenure of an employee who works in the position of Recruiter in California," how many work in the position for less than one or two years. (ECF 112 at 21, referencing ECF No. 101-23, ¶ 49.)

## III. MAJOR'S DECLARATION GOES BEYOND SUMMARIZING EVIDENCE AND INCLUDES SIGNIFICANT ERRORS

Plaintiffs argue that any summary they provide needs only to meet two conditions: admissibility of the underlying materials, and availability of those materials to TEK. (ECF No. 118 at 6.) However, the rule is not so permissive.

### A. MAJOR'S "SUMMARIES" ARE NOT USEFUL TO THE COURT

First, any summaries also must be useful to the judge and jury. *United States v. Pacific Gas and Electric Company*, Case No. 14-cr-00175-THE, 2016 WL 3901921, *3 (N.D. Cal. July 19, 2016), citing *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011). The "summaries" offered in this case are not useful to the Court, but in fact are highly misleading. As described in Section I above, the "summaries" of Connected data misleadingly purport to reflect all of the activities Recruiters performer and how they spend their time, when relatively few Recruiters activities are recorded in Connected, and some

activities that Plaintiffs insist are important are not recorded in Connected in any fashion. Plaintiffs repeatedly invoke the Major Declaration for conclusions that the Connected data is not capable to provide: namely, what work activities Recruiters perform.[7]

The Major Declaration generates more confusion by calculating percentages from the Connected Activity Types. As TEK explained in its Motion, many of the Activity Types do not reflect any action taken by a Recruiter. (ECF No. 112 at 6-12.) Major excluded the Activity Types of "Warehouse" and "Manual Adjustment" for that very reason. (*Id.* (noting these Activity Types "are not an action performed by the Named Plaintiffs.")) However, the other Activity Types that share this attribute were not excluded. Plaintiffs' justification in their Response that "other activity types do reflect actions that were taken with respect to candidates" shows how ill-suited the data is for this type of "summary." (ECF No. 118 at 9.) Plaintiffs point to one class member who testified that the "Offer Accepted" Activity Type signifies a recruiter completed "the entire process of identifying them, talking to them, and matching if they – if they match the job requirements, doing the references, meeting them, having my account manager talk to them and then submitting them and having them interview." (*Id.*) But "talking to them" is a "Call" or a "G2" Activity Type; "doing the references" is a "Reference Check" Activity Type; "meeting them" is an "Internal Interview" Activity type; "submitting them" is a "Submitted" Activity Type; and "having them interview" is an "Interviewing" Activity Type. (ECF No. 112 at 6-12.) There is no evidence from Plaintiffs to show one way or the other whether these different "activities" were recorded multiple times.

The confusion generated by the "summaries" is sufficient reason for the Court to disregard the Major Declaration.[8]

---

[7] *See, e.g.,* ECF No. 118 at 5 ("The Connected data identifies the work activities the Named Plaintiffs and TEK's declarants performed and the dates and times the activities were recorded."); *id.* at 10 ("The pivot tables in the Major Declaration count the activity types that Plaintiffs and TEK's declarants performed as Recruiter-Trainees and Recruiters."; *id.* ("[I]t is not necessary to separate the periods Plaintiffs and TEK's declarants worked as Recruiter-Trainees because the two positions perform the same work activities."); *id.* at 13 ("Because the Named Plaintiffs only worked for TEK as Recruiter-Trainees and Recruiters, the counts reflect all the activities the Named Plaintiffs performed in those two positions.").

[8] Plaintiffs contend that the Court should not strike the Major Declaration so long as the underlying materials are admissible and have been provided to TEK. Instead, Plaintiffs suggest that any deficiencies

B.  **MAJOR'S "SUMMARIES" ARE INFECTED WITH PLAINTIFFS' SUBJECTIVE VIEWS**

"In this Circuit, a district court's finding that the exhibits qualified under Rule 1006 is itself a determination that they are not infected with the preparer's own subjective views." *United States v. Lynch*, 735 Fed. App'x 780, 787 (9th Cir. 2018). Here, Plaintiffs' subjective views pervade the Major Declaration. For example, Plaintiffs did not distinguish between Connected Activity Type entries by the Named Plaintiffs when they were employed as Recruiter Trainees and Recruiters, which they justify by asserting that "the two positions perform the same work activities." (ECF No. 118 at 10.) Elsewhere, however, Plaintiffs argue that because the "class only includes the Recruiter job position," other positions should not be included. (*Id*. at 18.) In other words, Plaintiffs have applied their subjective judgment about when they believe it is acceptable to aggregate class and non-class job titles, leading to inconsistent approaches.

Plaintiffs attempt to justify their subjective view by arguing that the aggregated Connected Activity Type counts are "virtually the same" whether or not the Recruiter Trainee period is included or not (ECF No. 118 at 10), but this is simply not true. Plaintiffs obscure the difference by "Recruiter" alone to "Recruiter Trainee and Recruiter." (*Id*.) This has the effect of obscuring significant differences among the roles, such as the fact that the Named Plaintiffs, who as Recruiter Trainees recorded the "Attempted Contact" Activity Type in Connected as a much higher percentage of all Activity Types than when employed as Recruiter Trainees, as reflected in the chart below.[9]

| Chart 1: Named Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Connected Activity Type | Plaintiffs' Data: Includes both Recruiter Trainee and Recruiter | | TEK's Data: Recruiter alone | | Recruiter Trainee alone | |
| | Count | % of Total | Count | % of Total | Count | % of Total |
| Attempted Contact | 15,091 | 40.0% | 6,277 | 34.8% | 8,814 | 44.7% |
| Call | 5,770 | 15.3% | 2,228 | 12.4% | 3,542 | 18.0% |
| G2 | 8,075 | 21.4% | 4,317 | 23.9% | 3,758 | 19.1% |

The same is true with respect to the Declarants, who as Recruiter Trainees recorded the

---

in the Major Declaration should go to the weight the Court affords the document. (ECF No. 118 at 6.) Should the Court not strike the Major Declaration, it should be assigned no weight.
[9] This chart is based on figures from Plaintiffs' Response and their "Top 3." (ECF No. 118 at 10.)

"Attempted Contact" Activity Type in Connected as a much higher percentage of all Activity Types than when employed as Recruiter Trainees, as reflected in the chart below.[10]

| Chart 2: Declarants | | | | | | |
|---|---|---|---|---|---|---|
| Connected Activity Type | Plaintiffs' Data: Includes both Recruiter Trainee and Recruiter | | TEK's Data: Recruiter alone | | Recruiter Trainee alone | |
| | Count | % of Total | Count | % of Total | Count | % of Total |
| Attempted Contact | 19,664 | 22.2% | 17,141 | 20.5% | 2,523 | 52.3% |
| Call | 18,622 | 21.1% | 17,547 | 21.0% | 1,075 | 22.3% |
| G2 | 20,232 | 22.9% | 19,515 | 23.4% | 717 | 14.9% |

Also notable are the stark differences between the Named Plaintiffs and Declarants. The Named Plaintiffs, as Recruiters, recorded the "Attempted Contact" Activity Type in Connected as a much higher percentage of all Activity Types than did the Declarants when in the same role. (Compare Chart 1 and 2.) On the other hand, Declarants, as Recruiters, recorded the "Call" Activity Type in Connected as a much higher percentage of all Activity Types than did the Named Plaintiffs when in the same role. (Compare Chart 1 and 2.) What this indicates is that the Connected data has nothing to say about the primary job duties of Recruiters.

When it comes to the Major Declaration "tenure" calculations, Plaintiffs offer different justifications to support their subjective views. Plaintiffs subjectively omitted time employed as Recruiter Trainees, despite including time in that role in the Connected data "summaries" based on their subjective belief that "the two positions perform the same work activities." (ECF No. 118 at 10.). If Plaintiffs believe that to be true, then excluding time as a Recruiter Trainee artificially reduces the "tenure" of Recruiters. Plaintiffs also subjectively omitted Recruiters who worked in the role, took another role, then returned to the Recruiter role. (ECF No. 118 at 16.) Plaintiffs' justification is that "the removal spared Plaintiffs from having to make a judgment call with respect to whether the two separate Recruiter employment periods should be counted separately in light of the amount of time that passed between Recruiter employment periods." (*Id*.) This makes no sense, unless Plaintiffs concede that the Recruiter role has changed over time. Plaintiffs also subjectively omitted Recruiters who had worked in the role in other states, even if some of their time as a Recruiter was in California. (*Id*. at 17.) This

---

[10] This chart is based on figures from Plaintiffs' Response and their "Top 3." (ECF No. 118 at 11.)

makes no sense either, unless Plaintiffs concede that the Recruiter role varies from location to location. And Plaintiffs also subjectively omitted Recruiters who were active employees of TEK at the time the job data was produced. (*Id.* at 17.) These subjective decisions collectively removed more than 25% of the records from the set that was "summarized." Despite this, the Major Declaration represents that "[t]he Job Data reflects that the average tenure of an employee who works in the position of Recruiter in California is 1.21 years," while also making representations about the number of California Recruiters in the role for less than one year and less than two years. (ECF No. 101-23, ¶¶ 49-50.)[11]

At each turn, rather than summarizing the underlying datasets, Plaintiffs made subjective judgments to include or exclude information, and always in a manner that inured to their benefit. The failure to create a true summary is a sufficient basis to strike the Major Declaration.

### C.   MAJOR'S "SUMMARIES" SUFFER FROM ERRORS

As TEK explained in its Motion, Major's Declaration is inadmissible under Federal Rule of Evidence 1006 because it does not fairly and accurately represent the underlying data. (ECF No. 112 at 17-19.) Some of these errors are even made evident in the Response. For example, the chart of Activity Type counts for Declarants shows the number of Connected entries for Recruiters for the Activity Types "Service Touchpoint," "Reference Check," "Talent Created," and "Submitted." (ECF No. 118 at 11.) This is juxtaposed against the same Activity Types for these same Recruiters, while also adding time working as Recruiter Trainees. (*Id.*) However, for these Activity Types, the counts decreased, which is an illogical result.

The Major Declaration also errs by including duplicate entries in its calculations, thus misrepresenting the contents of the underlying documents. Plaintiffs attempt to handwave the presence of these duplicate entries among the Connected data. (ECF No. 118 at 14-15.) Plaintiffs paste one excerpt into their Response which shows five "Call," two "Attempted Contact," and one "Email"

---

[11] The distortions Plaintiffs have worked with this summary are plain from other record evidence. Plaintiffs questioned TEK's corporate designee Mr. Doyle about Recruiter tenure, showing him a document stating that "Our recruiters average three years of tenure." (ECF No. 101-10 (Doyle Tr.) 291:22-292:1.) Mr. Haycock also was asked about Recruiter tenure, and agreed that the average is three years. (ECF No. 101-1 (Haycock Tr.) 162:19-163:23.) Haycock also testified that "Executive Dashboard" documents include some information that is divided according to Recruiter tenure. (*Id.* at 93:6-94:8.) An example already in the record reflects that more than one-quarter of Recruiters have three or more years of tenure, and more than 15% have five or more years' tenure. (ECF No. 101-38 at 35.)

Activity Type occurring on the same date and at precisely the same time. (*Id*. at 15.) Plaintiffs argue "[t]his demonstrates that Connected permits multiple activities to be recorded at the same time and not that the entries are the exact same," but this statement is unsupported by any citation to evidence. (*Id*.) TEK's Motion identified thousands of examples of duplicate records. (ECF No. 112 at 13.) Plaintiffs also argue that the "duplicates occur infrequently and have an insignificant impact on the activity counts." (ECF No. 118 at 15.) But even after omitting the Warehouse Activity type as Plaintiffs propose, the duplicates represent more than 5% of the Connected records for Named Plaintiffs and more than 6% of the Connected records for the Declarants. (*Id*. at 15-16.)[12]

The "summaries" also are filled with argument, inferences, and assumptions not found in the data. With respect to the Connected data, Major excludes some categories of Activity because they "are not an action performed by the Named Plaintiffs" or declarants, while leaving in other categories for which the same rationale would apply. (Section II.C.1-2.) Major also lumps together records made while individuals were Recruiter Trainees, a role not included in the class, with those made while Recruiters. (*Id*.) With respect to Job Data, Major excludes those who worked as Recruiters during non-consecutive periods, and excludes those working as Recruiters at the time the underlying file was generated, with no explanation provided. (Section II.C.3.)

In short, by including inaccurate data, and mischaracterizing and injecting her own unwarranted assumptions into the data, Major inaccurately portrays the underlying records and renders impermissible and inadmissible legal argument. Such evidence is not admissible under Federal Rule of Evidence 1006.

## IV.    CONCLUSION

Defendant respectfully requests that the Court strike the Declaration of Lynsey Major and decline to consider it in connection with Plaintiffs' Motion for Partial Summary Judgment.

---

[12] Using Plaintiffs' figures, half of the 4,290 duplicate records are related to Plaintiffs (i.e., 2,145), out of 40,308 total records, which is 5.3%. As to Declarants, 13,755 duplicate records appear in that data set, out of 213,528 total records, which is 6.4%.

DATED: August 7, 2024

SEYFARTH SHAW LLP

By: s/ Andrew Scroggins
    Andrew L. Scroggins
    Brian P. Long
Attorneys for Defendant
TEKSYSTEMS, INC.