UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BO AVERY, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>TEKSYSTEMS, INC.,<br><br>           Defendant. | Case No. 3:22-cv-02733-JSC<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 105 |

A class of Recruiters for TEKsystems, Inc. ("TEK") allege TEK improperly classifies Plaintiffs and other Recruiters as exempt from California overtime, wage, and hour laws and therefore illegally underpays Recruiters. Now pending before the Court is Defendant's motion to compel arbitration (Dkt. No. 105).[1] Having carefully considered the briefing, and with the benefit of oral argument on August 15, 2024, the Court DENIES Defendant's motion to compel arbitration. TEK's imposition of the arbitration agreement after class certification was fully briefed was misleading and interfered with the Recruiters' rights. Further, TEK waived any right to arbitration of the claims of certified class members by litigating this action for two years before filing the motion to compel arbitration.

**MOTION TO COMPEL ARBITRATION**

**I.    PROCEDURAL BACKGROUND**

On April 9, 2021, a group of TEK recruiters filed a complaint in the Western District of Pennsylvania, *Thomas, et al. v. TEKsystems, Inc.*, Case No. 2:21-cv-00460-WSS (W.D. Pa.). (Dkt. No. 21 at 6.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  Named Plaintiffs in this case filed a putative class action in state court on January 28, 2022.  (Dkt. No. 1-1 at 3.)  TEK removed the case to federal court on May 6, 2022.  (Dkt. No. 1.)  TEK filed a motion to dismiss on July 28, 2022, arguing this case should be transferred, dismissed, or stayed pursuant to the "first-to-file" rule.  (Dkt. No. 21.)  The Court denied Defendant's motion on August 31, 2022.  (Dkt. No. 31.)  Discovery proceeded and the Court set a schedule through class certification.  (Dkt. No. 37.)  The Court referred the parties to the Northern District of California ADR Program and a mediation, facilitated by a volunteer mediator, occurred in May 2023.  The parties subsequently stipulated to extend the class certification briefing schedule.  (Dkt. No. 54.)

On October 6, 2023, Plaintiffs filed a motion to certify the class.  (Dkt. No. 63.)  Class certification briefing closed on December 14, 2023.  Eight days later Plaintiffs filed an emergency motion for a protective order.  (Dkt. No. 73.)  Plaintiffs reported "on December 19, 2023, TEK's counsel emailed Plaintiffs' counsel to inform them that TEK had adopted an arbitration policy for its internal employees, including Recruiters, and that it had disseminated notice of the policy that same day."  (*Id.* at 7.)  Plaintiffs urged the Court to void TEK's arbitration agreement with Recruiters because it was "misleading and coercive."  (*Id.* at 12.)  The Court granted in part and denied in part that motion, explaining "the determination of whether any arbitration agreement [wa]s invalid [wa]s not yet ripe," but the Court ordered TEK "to disclose any communications from TEK to putative class members about their claims in this case to Plaintiffs' counsel."  (Dkt. No. 79.)

The Court heard argument on Plaintiffs' class certification motion on February 1, 2024.  At no time during the class certification proceedings did TEK raise an arbitration agreement as an issue.  On February 13, 2024, the Court granted Plaintiffs' motion and certified a "class of all current and former Recruiters employed by TEK from January 28, 2018 to the final date of judgment and a subclass of all the class members who worked for TEK on or after January 28, 2019 and are no longer employed by TEK and have not been employed by TEK for more than 72 hours."  (Dkt. No. 84 at 1.)

A month later the Court held a further case management conference and heard argument on

2

Plaintiffs' opposed motion for approval of class notice. The Court ordered the parties to meet and confer and submit further proposed notice, and subsequently approved class notice. (Dkt. Nos. 91, 97.) Pursuant to a schedule imposed by the Court, Plaintiffs moved for partial summary judgment on May 14, 2024. (Dkt. No. 100.)

On June 10, 2024, more than two years after TEK removed this action to this Court, TEK moved to compel arbitration of the claims of certain certified class members. (Dkt. No. 105.)

## II.     FACTUAL BACKGROUND

"A significant part of TEK's business is placing employees," which it calls "consultants," "on temporary assignment to TEK's clients and hiring consultants to perform IT services for clients." (Dkt. No. 105-1 ¶ 7.) TEK's current policy—which has been in effect since before April of 2021—is that "every U.S. consultant must sign a mutual arbitration agreement with" TEK "as a condition of employment before they may begin an assignment at TEK." (*Id.* ¶ 8.)

DeAndrei Drummond, TEK's Vice President and General Counsel, has "been a proponent of expanding TEK's arbitration policy to TEK's internal employees" since he was hired by TEK in October of 2021. (Dkt. No. 105-1 ¶¶ 4, 9.) "In mid-2023," Mr. Drummond "sought approval from business leaders at TEK to roll out an arbitration policy that would apply to all internal employees of TEK in the United States." (*Id.* ¶ 10.) He "received approval of that concept in late September 2023." (*Id.*) "The template for TEK's Mutual Arbitration Agreement for internal employees is the agreement that TEK ha[d] been using for its consultants for many years with just a few minor changes." (*Id.* ¶ 11.)

TEK "reviews and updates its policies on an annual basis, with announcements at the end of the year of policies that will be changing in the upcoming year." (*Id.* ¶ 12.) The arbitration agreement was emailed "to all current internal employees in California," a group of about 370 people, fewer than 200 of whom were potential class members, "on December 19, 2023." (*Id.* ¶ 14.) Those internal employees "received an email sent from the email address 'TEKsystems via DocuSign' with the subject line 'Mutual Arbitration Agreement.'" (*Id.* ¶ 16.) The text of the email provided:

> As you know from the email you received earlier today, at this time

3

of year we typically review and update our company policies, required trainings and employee information.

In 2024, TEKsystems is instituting a mutual arbitration agreement for internal employees in the U.S. Mutual arbitration agreements are commonplace today. Most people have signed them as part of cell phone contracts, rental agreements, and credit card agreements. They are increasingly common with employers as they provide a mutually agreeable way to settle disputes while being more efficient and cost effective for both employees and the company.

We value each employee and believe that workplace concerns are best resolved through open and candid discussions, and employees are encouraged to raise and discuss any concerns as soon as they arise. In the event the issue or concern cannot be resolved satisfactorily, or if an employee chooses not to pursue these informal channels, employees will be required to pursue covered claims through mandatory arbitration as described in the attached Agreement.

Attached is the Company's Mutual Arbitration Agreement (the 'Agreement'). Please review it carefully as it affects our mutual right to litigate certain types of legal claims in court, and also includes a waiver of class and collective action claims. Under the Agreement, both employees and the Company would pursue any 'covered claims' through individual arbitration instead of court litigation or class/collective actions. **In our experience, litigation in court -- particularly class and collective actions -- are wasteful, inefficient means for resolving disputes, and tend to enrich only attorneys rather than the individuals who may have legitimate claims.**

As part of this Agreement, the Company will pay for the costs of arbitration, minus a small 'filing fee.' For pursuing individual claims, the arbitration forum is similar to court, but less formal. The same substantive laws apply to your claim, and the arbitrator (whom you would participate in selecting) would be directed to reach a conclusion and can provide the same remedies you could receive in an individual lawsuit in court. Before initiating arbitration, employees are encouraged, but not required, to come forward with any concerns or issues they may have through your HR employee relations manager or leader.

**All new and current employees will be subject to this Agreement as a condition of working for the Company. If you choose to continue working here after December 31, 2023 you'll be deemed to have accepted the Agreement, and we are asking for your signature to reflect that.** Please review, acknowledge and electronically 'sign' the agreement by clicking 'I agree.' If you have any questions regarding the Agreement, please feel free to contact the HR team at HR@teksystems.com.

You can find additional information and FAQs here (https://allegiscloudmy.sharepoint.com/:w:/g/personal/suwallac_teksystems_com/Eeqfe4PW6r9AnqlSs7J3Y psBH40Sm4ppgANGYSRLgZrV3A?e=YkZcZ0&CID=896A3E14- C2D8-49F5-AD75- D0DF11630AA3&wdLOR=c01AE3873-65E2- 4F3B-B73B-A2744BA1D312 [allegiscloud-my.sharepoint.com]).

4

(Dkt. No. 105-1 at 10-11 (emphasis added).)

The email included "a link to the Mutual Arbitration Agreement," which recipients could access by clicking on the link. (*Id.* ¶ 17.) The email also included a link to a "FAQ" (Frequently Asked Questions) document. (*Id.* ¶ 18.) The FAQ document provided, in part:

**Why is the Company implementing the Agreement?**
- The Company believes that arbitration provides a mutually agreeable way to settle disputes while being more efficient and cost effective for both employees and the Company.
- Arbitration is a forum for dispute resolution where the dispute is presented by each side to a neutral decision-maker, an arbitrator, who then makes a decision on the appropriate outcome.
- In our experience, litigation in court -- particularly class and collective actions -- are wasteful, inefficient means for resolving disputes, and tend to enrich only attorneys rather than the individuals who may have legitimate claims.

**How does it differ from going to court or "litigating" a claim?**
- Arbitration provides for relatively efficient resolution of disputes between parties. An arbitration is essentially an informal trial in front of the arbitrator. In order to ensure finality and allow the litigants to move on after a dispute, decisions in arbitration are typically not appealable. If you went to court (litigation), the issues may be presented to a judge or jury (or both), and the process is subject to more formal rules and may take a longer time to get to resolution. In addition, court cases can be appealed, often adding a period of years before final resolution of the case.

**What if I'm participating in a class action suit against the Company – does this agreement impact that?**
- Anyone currently part of a class-action suit involving the company will have the opportunity to remain a part of that class. Any class participant will receive a separate document that will require signature noting that they want to continue to participate in the claim. Otherwise, the mutual arbitration agreement would apply.

**What happens if I don't sign the agreement?**
- The mutual arbitration agreement is valid beginning January 1, 2024 for all U.S. employees regardless of signature. This is similar to our other policies – by continuing your employment with the Company, you agree to our policies.

> **Who picks the arbitrator? The Company? Someone Else? How is the person picked?**
> - All arbitrations will be handled by JAMS, which is a neutral body that administers all kinds of arbitrations for all sorts of parties nationwide, that will ultimately select the arbitrator. JAMS does so in accordance with the rules referenced in the Agreement. Essentially, if you were to file a claim, JAMS would send you and the Company a list of arbitrators. Both of us would get to strike names we don't like and rank the others and return our lists to JAMS, who would then sort out who should be appointed the arbitrator based on those responses (e.g., if we both rank the same person #1, that would be the person selected).
>
> **Can I still get the same result that I would have been able to get in court for my individual claims?**
> - Yes. The arbitrator will have the same authority to award all the same remedies that would have been available to you in court on an individual claim. But you will not have the right to proceed on a class-wide claim (which generally tends to enrich attorneys, not individual class members).
>
> **Does this require us to waive class claims? Why is that a requirement?**
> - Yes. To the extent you have one of the covered claims, the Company cares about resolving your claim specifically and thoroughly. A class claim requires the Company to ignore individual employee issues and concerns. Additionally, attorneys, not employees, are often the biggest winners in class actions, often charging exorbitant fees to both the class and the employer involved, reducing the money actually received by class members.

(Dkt. No. 105-1 at 18-20.)

The arbitration agreement's effective date was January 1, 2024—12 days after the agreement was emailed and just after the Christmas and New Year's holiday season. (*Id.* ¶ 15.) The agreement provides, in part:

> As consideration for my continued employment with TEKsystems, Inc. and for the mutual promises herein, I and the Company (as defined below) (each a "party" and collectively "the parties") agree that:
>
> **Except (i) as expressly set forth in the section, "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that I may have against TEKsystems and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me, including contract claims; tort claims; discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties or restitution; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to my application for employment with the Company, and/or my employment with the Company, and/or the terms and conditions of my employment**

6

**with the Company, and/or termination of my employment with the Company (collectively "Covered Claims"), are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury. The parties hereby forever waive and give up the right to have a judge or a jury decide any Covered Claims.**

YOU WILL BE DEEMED AS HAVING ACCEPTED THIS AGREEMENT IF YOU REMAIN EMPLOYED BY TEKSYSTEMS ON OR AFTER JANUARY 1, 2024.

To the maximum extent permitted by applicable law, the parties agree that:
- No Covered Claims may be initiated or maintained on a class action, collective action, or representative action basis either in court or arbitration . . .

I ACKNOWLEDGE THAT:
- I have carefully read this Agreement, understand the terms of this Agreement, and am entering into this Agreement voluntarily;
- I am not relying on any promises or representations by the Company except those contained in this Agreement;
- I am giving up the right to have Covered Claims decided by a court or jury;
- I have been given the opportunity to discuss this Agreement with my own attorney if I wish to do so; and
- My affirmative signature and/or acknowledgement of this Agreement is not required for the Agreement to be considered as effective. If I remain employed with TEKsystems on or after January 1, 2024, I will be deemed to have consented to, ratified and accepted this Agreement through my acceptance of and continued employment with TEKsystems.

(Dkt. No. 105-1 at 14-16.)

Shortly after the arbitration agreement was sent, all TEK Recruiters who were in the "putative class received an additional communication sent from the email address 'TEKsystems via DocuSign <dse_na2@docusign.net>' with the subject line 'Mutual Arbitration Agreement and Current Class Action Suit.'" (Dkt. No. 105-1 ¶ 19.) The email provided:

7



(Dkt. No. 105-1 at 22.)  The email also instructed recipients: "Do Not Share This Email This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others."  (*Id.* at 23.)  The "Review Document" button took recipients to a document on DocuSign that provided:

> **Notice of Right to Opt-Out of Mutual Arbitration Agreement for Limited Purpose**
>
> Like all other employees of TEKsystems, you received from TEKsystems a Mutual Arbitration Agreement ("Agreement") that will be effective as to all TEKsystems employees beginning on January 1, 2024.
>
> You are receiving this additional communication because you are a putative class member in the case captioned *Avery, et al. v. TEKsystems, Inc.*, Case No. 3:22-cv-027733-JSC, that is pending before the United States District Court for the Northern District of California ("*Avery*") and the Agreement may affect your rights in that matter.
>
> The main claim in *Avery* is that TEKsystems allegedly misclassified

> Recruiters as exempt from the overtime requirements under California law and that, therefore, TEKsystems owes Recruiters back overtime pay and various penalties. TEKsystems denies the substantive allegations in the case. A motion for class certification has been filed, which TEKsystems has opposed, and the court has not issued a decision on it or on the merits of the case. You may be able to receive money if the court certifies a class and if either the court ultimately rules in favor of the class on the merits or if the parties settle the case.
>
> If you wish to view the operative complaint in *Avery*, which contains contact information for the attorneys who seek to represent a class, you may do so by clicking on the link in the Docusign email or typing in this URL https://allegiscloud.sharepoint.com/teams/legalDocs/LD/Avery.pdf [allegiscloud.sharepoint.com].
>
> The Agreement contains a broad definition of Covered Claims and does not exclude the claims brought in *Avery*. Accordingly, unless you separate from your employment with TEKsystems before January 1, 2024, or take actions as described below before January 9, 2024, TEKsystems will take the position in *Avery* that, if a class is certified, you could not be a part of it and that you can bring claims only in individual arbitration.
>
> If you wish to remain a part of the putative class in *Avery* in federal court, you may opt out of the Mutual Arbitration Agreement for the limited purpose of remaining in the *Avery* putative class by signing below and returning this form no later than January 9, 2024.
>
> You of course are free to consult your attorney.
>
> I wish to opt-out of the Mutual Arbitration Agreement for the limited purpose of remaining in the putative class in *Avery, et al. v. TEKsystems, Inc.*, Case No. 3:22-cv-02733-JSC (N.D. Cal.).

(Dkt. No. 105-1 ¶ 21.)

The link in the email took recipients to the operative version of the *Avery* complaint. (Dkt. No. 105-1 ¶ 22.) The complaint was "hosted on TEK's intranet site, and it [wa]s accessible to TEK employees who are on the TEK network." (*Id.* ¶ 22.)

At present, 123 individuals who are members of the class failed to opt out of the arbitration agreement. (Dkt. Nos. 105-4 ¶ 26 ("DocuSign records reflect that 126 *Avery* class members received the opt-out opportunity but did not sign it."); 111 at 5 n.1 (TEK acknowledging two individuals opted out of arbitration and a third asked to be excluded from the class, bringing the number of individuals who could be compelled to arbitration to 123).) TEK moves to compel individual arbitration of the claims of the 123 certified class members.

### III. DISCUSSION

#### A. Federal Rules of Civil Procedure 23(d)

Federal Rules of Civil Procedure 23(d) provides, when conducting a class action, "the court may issue orders that . . . impose conditions on the representative parties or on intervenors. Fed. R. Civ. Proc. 23(d). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). But, any "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* "The key is whether there is 'potential interference' with the rights of the parties in a class action." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) (quoting *Gulf Oil*, 452 U.S. at 100).

The discretionary authority of "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011); *see also In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 864 (9th Cir. 1986) ("Obviously district courts must have broad discretion, resting on the specific facts of each case, in framing procedures for class actions under Fed. R. Civ. P. 23."). "Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights." *Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (citing cases); *see also O'Connor v. Uber Tech., Inc.*, No. 13–cv–3826 EMC, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (holding "the promulgation of" an "arbitration provision[] runs a substantial risk of interfering with the rights of Uber drivers [the putative class] under Rule 23," and requiring the defendant give the putative class "clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and reasonable means of opting out of the

1  arbitration provision," and invalidating the arbitration agreements of current putative class
2  members); *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-04324-JST, 2015 WL
3  6674575, at *2 (N.D. Cal. Nov. 2, 2015) ("Courts in this district have limited communications, as
4  well as invalidated agreements that resulted from those communications, when they omitted
5  critical information or were otherwise misleading or coercive."); *Reed v. Scientific Games Corp.*,
6  No. C-18-0565-RSL, 2021 WL 2473930, at *4 (W.D. Wash. June 17, 2021) (denying a motion to
7  compel arbitration when the "defendant made changes to its terms and conditions of use which, if
8  accepted, would essentially opt putative class members out of the class and retroactively change
9  the governing law so that the class claims would fail, all without any acknowledgment of this
10 litigation, description of the claims asserted, summary of the status of the case, input from the
11 named plaintiff or her counsel, or oversight from the Court."); *Billingsley v. Citi Trends, Inc.*, 560
12 F. App'x 914, 922 (11th Cir. 2014) ("Whatever right Citi Trends may have had to ask its
13 employees to agree to arbitrate, the district court found that its effort in the summer of 2012 was
14 confusing, misleading, coercive, and clearly designed to thwart unfairly the right of its store
15 managers to make an informed choice as to whether to participate in this FLSA collective action.
16 Since the arbitration agreements by their terms will directly affect this lawsuit, the district court
17 had authority to prevent abuse and to enter appropriate orders governing the conduct of counsel
18 and the parties."); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582, at *5
19 (C.D. Cal. Apr. 6, 2018) ("Courts in the Ninth Circuit have limited communications, as well as
20 invalidated agreements that resulted from those communications, when they omitted critical
21 information or were otherwise misleading or coercive.").

22 TEK's communications with putative class members after the class certification motion
23 was fully briefed but before the Court heard oral argument threatened the fairness of the litigation
24 because the communications were misleading and omitted key information. In TEK's first email
25 to putative class members, TEK informed its employees **"[i]n our experience, litigation in**
26 **court—particularly class and collective actions—are wasteful, inefficient means for resolving**
27 **disputes, and tend to enrich only attorneys rather than the individuals who may have**
28 **legitimate claims**." (Dkt. No. 105-1 at 10-11 (emphasis added).) In the FAQ document linked in

11

the email to all California employees, TEK doubled down, explaining an "arbitrator will have the same authority to award all the same remedies that would have been available . . . in court on an individual claim," but employees "**will not have the right to proceed on a class-wide claim (which generally tends to enrich attorneys, not individual class members**)." (Dkt. No. 105-1 at 18-20 (emphasis added).) TEK further asserts it "cares about resolving [its employees'] claims specifically and thoroughly" and **class claims "require[] the Company to ignore individual employee issues and concerns. Additionally, attorneys, not employees, are often the biggest winners in class actions, often charging exorbitant fees to both the class and the employer involved, reducing the money actually received by class members**." (*Id.* (emphasis added).)

TEK does not explain why it included disparaging comments about class actions and their attorneys in its communications to putative class members. And it fails to cite any case approving such disparaging communications to putative class members. Given the timing of TEK's implementation of an arbitration agreement, the derogatory comments appear designed to prevent putative class members from opting into the lawsuit and opting out of the arbitration agreement (for the purpose of participating in the *Avery* class action). But, regardless of TEK's good faith or lack thereof, TEK's communications were misleading. For instance, a recipient of TEK's email may think they, personally, may have to pay "exorbitant fees" to attorneys if they opt into the class action. TEK's communications to putative class members are especially concerning given the timing: TEK's emails disparaging class action and class action attorneys were the first communication many putative class members received about the case. And the communications did not tell putative class members they could—for free—consult Plaintiffs' counsel and did not provide them with Plaintiffs' counsel's contact information. Requiring class members to click through multiple links and then locate the contact information on a copy of the complaint was insufficient. And TEK's statement at the end of the email that Recruiters were "of course free to consult" their attorney is disingenuous. What attorney would these employees have? And who would pay for such advice? A fair and not misleading communication would have advised putative class members they could consult with Plaintiffs' counsel for free and provide counsel's contact information. And the email to putative class members warned the employees that that they

12

could not share the email with others. (Dkt. No. 105-1 at 22.) So, how are they supposed to get advice? Further, TEK hid from the putative class members that the motion for class certification had been fully briefed and was scheduled to be decided early the next year. And, TEK did not provide the putative class members with those pleadings or even information on how they could review them.

In short, after class certification was fully briefed, TEK turned this Rule 23 opt-out class proceeding into an opt-in proceeding, and to ensure as few current employee class members as possible opted in, TEK disparaged class actions and hid important information from the putative class members. These unilateral communications thus threatened the fairness of the class action proceedings.

TEK maintains the statements disparaging class actions and attorneys "appear in general communications to all internal employees and are not linked to this particular litigation." (Dkt. No. 111 at 9-10.) But TEK sent those statements to all putative class members still working at the company. It is immaterial that TEK *also* sent those statements to other employees who are not part of this litigation. Indeed, TEK's ability to send specific communications to *only* putative class members begs the question of why it sent two contradictory emails to those employees rather than a single email explaining relevant information. The first email sent to putative class members indicated the arbitration agreement was a mandatory condition of employment and disparaged class actions and class action attorneys. In that the email—the email that included the arbitration agreement—TEK stated "All new and current employees will be subject to this Agreement as a condition of working for the Company. If you choose to continue working here after December 31, 2023 you'll be deemed to have accepted the Agreement, and we are asking for your signature to reflect that." (Dkt. No. 105-1 at 10-11.) TEK did not indicate that there was any opt-out procedure. Instead, TEK explained the acceptance of the arbitration agreement was a mandatory condition of employment. It was only in the second email sent to putative class members that TEK indicated opting out from the arbitration agreement was possible, and then only for the purpose of litigation about which the putative class members had never before been notified. The confusing nature of the emails is heightened because the emails were sent on December 19—just

before the Christmas holidays, and during a time when many employees were likely on vacation or otherwise engaged and thus unlikely to be able to obtain advice.

Accordingly, the Court will not enforce the arbitration agreement and DENIES TEK's motion.

### B. Waiver

Plaintiffs also maintain TEK has waived its right to compel arbitration. "Waiver. . . 'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Id.* at 417.

The Ninth Circuit's "rule of waiver of the right to arbitrate" is "a party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Id.* (cleaned up).

TEK waived its right to compel arbitration of the claims of certified class members. During the class certification proceedings, it never raised arbitration as an issue, even though, according to its own testimony, its CEO got the go ahead to impose mandatory arbitration on all internal TEK employees, including the (then) putative class members, in September 2023—before Plaintiffs filed their class certification motion. And, TEK claims the mandatory arbitration agreement became effective before the Court heard argument on the class certification motion. Yet, TEK did not raise it as an issue. Instead, it waited until after the Court certified the class, after the Court approved class notice, after the Court set a briefing schedule on Plaintiffs' partial summary judgment motion, and after Plaintiffs filed their summary judgment motion, to finally move to compel arbitration. Such wait and see conduct is inconsistent with the right to arbitrate.

That TEK advised the Court in March 2024—after class certification was granted— that it intended to move to compel is of no moment. First, March 2024—nearly two years after TEK removed the case and after class certification was granted—is itself too late. Second, "[a]

14

statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Hill*, 59 F.4th at 471 (cleaned up).

TEK's insistence that it did not waive the right to compel arbitration because it "did not have an *existing* right to compel arbitration' until it had entered into Agreements" with the putative class members, and the Arbitration Agreement "did not take effect until January 1, 2024" (Dkt. No. 111 at 12), is unpersuasive. First, if the agreements took effect on January 1, 2024, why did it not raise the issue in advance of the February 1, 2024 class certification hearing? Why did TEK not move to compel arbitration before the Court ordered notice on the certified class, six months after the Agreements purportedly went into effect? Why did TEK wait until the Court set a briefing schedule on Plaintiffs' summary judgment motion, and TEK saw the motion, to move to compel arbitration?

Second, TEK knew of its right to impose a mandatory arbitration agreement even before it removed the action to this Court. But it waited until the December 2023 holiday season—18 months into this litigation—to impose arbitration. TEK's reliance on the statement in *Hill* that "the test for waiver of the right to compel arbitration" requires "knowledge of an existing right to compel arbitration," *Hill*, 59 F.4th at 468, is misplaced. In *Hill* there was an existing arbitration agreement so the court had no reason to address the situation presented here. And, the Supreme Court has instructed courts to apply general rules related to waiver rather than "invent[ing] special, arbitration-preferring procedural rules." *Id.* at 418. In the general waiver context, parties can waive almost any right. Indeed, "even constitutional rights can be waived if not timely asserted." *Fox v. Johnson*, 832 F.3d 978, 989 (9th Cir. 2016) (cleaned up). Moreover, TEK posits no reason why the Court should hold an employer can intentionally wait to impose an arbitration agreement until after it has litigated a case for two, three, four years, but waives the right to compel arbitration in those exact same circumstances if it has an existing arbitration agreement. In either scenario the employer litigated the case rather than take actions to impose arbitration. It is thus unsurprising that TEK could not find any case anywhere that draws the distinction it urges the Court to make.

So, the motion to compel arbitration is DENIED for the additional reason TEK waived its

right to compel arbitration of the claims of certified class members.

## CONCLUSION

For the above reasons, TEK's motion to compel arbitration is DENIED.

This Order resolves Dkt. No. 105.

**IT IS SO ORDERED.**

Dated: August 21, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge